Our first case of the day is cause number 17-50674, Smith v. SXSW Holdings, Incorporated. Are the parties ready to proceed? All right. Appellant, you may proceed. If it pleases the Court, good morning. My name is Scott Hendler. I represent the appellants who are the plaintiffs in the court below. They were Lizzy Plug, the widow of Stephen Cranmer, and the mother of his minor child and representative of his estate, and his mother, Elizabeth Smith. The District Court applied a Rule 56 standard to decide a 12b6 motion while prohibiting any discovery in the case with an order to stay. I'd like to address two issues that I think the Court focused on in that regard, control of the premises and the foreseeability of the criminal activity. The issue is not whether I can prevail at the pleading stage, it's whether I'm entitled to offer evidence in support of my claims. And I respectfully submit that the District Court did not permit that while at the same time evaluating the pleadings in a way that required it. With regard to the control issue of the premises, South by Southwest is a large festival that takes over the entire Central Business District of Austin. And that is reflected on the right-of-way permit that they apply for, where it's asked, where is this festival, this street festival going to take place, so it's the entire Central Business District. In the right-of-way permit, they applied for and obtained the right to control the 1,000 block of Red River Street. The permit and the ordinance it implements, it further required that a traffic control plan be implemented in accordance with the right-of-way permit. The traffic control plan was then delegated to the City. Now in this case, the permit holder is responsible for the traffic control plan, and I submit to you that it's a non-delegable duty. And whether they hire an independent contractor that's a private engineer or the engineers from the City of Austin, it doesn't change that fact. So the traffic control plan did not close some of the streets that were subject to the right-of-way permit. South by Southwest says, well, the traffic control plan then magically shrunk the right-of-way to conform to the traffic control plan. And I respectfully submit that that's exactly backwards. The right-of-way permit comes first, and you apply for what streets you're going to close. That's approved. When that's approved, you then devise a traffic control plan to apply to those streets that are included. So they didn't close the 1,000 block of Red River. They closed Red River from the 500 block to where the 1,000 block began. And when you say they, you're talking about South by Southwest. Yes, Your Honor. You're saying they closed it. Yes. Although what you're telling me is they delegated that responsibility to the City. That's correct. And so your argument hinges on the determination that that was a non-delegable duty. That's one aspect of my argument that hinges on that. That's correct. Now, I also submit to you that the City undertook that responsibility not as a governmental function. And even though that is a typical governmental function in the ordinary course of municipal management, traffic control, in this case, the City of Austin became an official co-sponsor of this festival. That's not something they're required to do. That's not part of their municipal responsibility as a governmental entity. As a co-sponsor, I submit that they undertook this role as a proprietary function. Even though it's typically a governmental function. And I recognize that's a bit of a thorny issue. But if you're operating an amusement, which is clearly under the Texas Tort Claims Act a proprietary function, then whether you undertake something that is traditionally a governmental function in the role of discharging the proprietary function, is that proprietary or is that governmental? And I don't know the answer to that. But I think you start with what is the capacity that they're undertaking the responsibility for? And they're undertaking that responsibility as a festival organizer. Now the Texas Tort Claims Act says specifically, owner and operator of an amusement. So I recognize that the City of Austin does not own South by Southwest. But they own the premises where the festival took place. And in their role as a co-sponsor, they became an operator. So I think that there is a way to fit this within the proprietary function role of a municipality in this context. But be that as it may, the South by Southwest had a non-delegable duty in MBank v. Sanchez, which we submitted last night in a Rule 28J letter and provided a copy to the court this morning. Is that a 1992 case? Texas Supreme Court, yes, Your Honor. And you submitted that in a 28J letter? Yes, I discovered it over the weekend. So it's not a new decision, but it's something that I discovered in the course of my preparation. And I believe it's relevant because it addresses this issue and quotes the restatement of torts second on this issue, that one who by statute or by administrative regulation, and in this case the ordinance and the right-of-way permit required that, is under a duty to provide specified safeguards or precautions for the safety of others, is subject to liability to others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions. Now, this case was decided in the context of whether a bank was liable for an independent contractor that they sent out to repossess property. That issue as to whether or not this part of the restatement applies to that set of circumstances has been criticized, although it has not been overruled. And this principle has repeatedly been reaffirmed by the Texas Supreme Court in case law. And so I think it's a sound principle. I think, frankly, it applies directly on point to our facts where there's an ordinance that requires a street festival organizer to undertake a traffic control plan to protect the festival goers from traffic that's circulating around those premises. So – I wanted to ask you about – oh, go ahead. No, go ahead. I was going to ask you about the foreseeability. Yes, Your Honor. What is the best Texas court decision that you think establishes foreseeability in this type of situation? Well, Timberwalk obviously is the traditional opinion. Del Lago doesn't apply exactly to this situation. But what Del Lago teaches, I believe, is that Timberwalk is not the exclusive way to determine foreseeability. Timberwalk is a sort of – do you need some paper towels or something? There's some over here. Yes. I guess we need to use real cups up here. Your 28-J letter. So Judge Costa, in response to your question – Hold on just a moment. Oh, yes. I'm going to add 30 minutes to your time. Okay. Thank you. Thank you very much. All right. Add two minutes. You may proceed. Thank you, Judge Graves. Judge Costa, in response to your question, I think that Del Lago teaches that Timberwalk, while it may be the primary proxy for determining foreseeability, isn't the exclusive way to do it. And in this case, there was an acute awareness of the risk, and there is evidence in the not only had knowledge, actual knowledge, of all of these prior events where automobiles collided with pedestrians or bicyclists during the South by Southwest Festival, but they rehearsed with Travis County EMS how to respond to a mass casualty incident where an automobile plowed into a crowd of festival goers one week prior to the incident. That raises a level of awareness that, while it's not imminent in the sense of Del Lago where they were observing this raucous behavior increase in a bar and they kept serving alcohol and a fight broke out, but it makes the foreseeability issue – it seems to elevate it from what you're trying to accomplish in Timberwalk. In Timberwalk, you're trying to predict, was it reasonable for the – But so it seems like you're trying to say Del Lago is sort of an exception to Timberwalk and this scenario should also be an exception to the normal Timberwalk. I mean, isn't the problem with that that we're sitting in diversity and we can't really create – extend the common law of Texas, only Texas would be able to do that? Yes, you're correct about that. And so that may be an issue that the Texas Supreme Court has to take up. And I will tell you that there are parallel cases making their way through the courts of Texas. The 14th Court of Appeals heard oral argument on the state cases that were dismissed on summary judgment that were other victims of the same incident. And they sued in state court. They sued in state court. Against the same defendants here? Same defendants here, that's correct. Same complaint, frankly. We prepared the complaint and everyone adopted our complaint. So yes, you're right. You can't extend the law as a court of appeals sitting in diversity. But I further submit that we can meet the Timberwalk factors. We can meet the Timberwalk factors given the opportunity to develop the evidence. So there is a claim under Texas law that a premises owner can be liable for criminal activity that occurs on their premises if they have reason to know that there's a risk and the risk is unreasonable. We pled those things. Now, the district court seemed to say that, well, we pled it, but we didn't develop the facts enough. We didn't develop the evidence enough to support the Timberwalk factors. But that's an evidentiary stage. That's a summary judgment stage issue. Counsel, what would you have the city and the sponsor, what would you have them do? Is there a risk? No question about it. They are aware of it. Now, what would they have to do so that they would not be negligent? So the uniform manual on traffic control devices provides for how to address this issue. And that, we pled that and attached that as an exhibit to our complaint. We argue that they should have implemented, which they subsequently did, positive barriers, K-rails, the kinds of things that you see around construction sites when you drive downtown. These are plastic, hollow, positive traffic control devices that are either filled with water or sand. Now, they are designed, and we pled this as well in our complaint, with cutouts in the bottom so that you can slide a hand jack under it and move it very quickly. A hand jack, which we also pled, costs $300. So the cost-benefit analysis of doing this weighs in favor of taking more aggressive precautions against traffic, where you're going to occupy, where you're going to encourage citizens to occupy the roadway for a festival when you know there's live traffic around. And not only live traffic, but an excessive number of driving. Where are you going to put them? Where are you going to put them? Are we going to know where a drunk is going to pick to try to get away from the police? No, Your Honor, but that's exactly the issue. South by Southwest is in a better position to protect its festival goers than being able to predict where a drunk driver is going to be. So if you close off the area with these barriers so the drunk driver can't get through. Then you would close off all of the streets, all of the adjoining streets. You wouldn't close them. You'd either close them or not close them. I'm not sure I follow the question, Your Honor. I'm asking you what the city would do and not the risk. So I'm saying they should close the streets that are subject to the right-of-way permit. And they should close those streets with positive barriers, not road closed signs. I'll give you an example, but you say. Why did they pick the streets where the drunk's going to drive? Pardon me? I couldn't hear you. I'm sorry. How do they know what streets they have to block? Because they know what streets they have to block by what streets they're going to encourage their festival goers to occupy. What streets are subject to the right-of-way permit? Those are the streets they have to block. And that's pursuant to the ordinance. The ordinance says if you're going to apply for and obtain a right-of-way permit on these streets, you have to implement a traffic control plan that is, corresponds to the nature of the event and the type of risk you're trying to protect against. But I've heard all those examples in your complaint. I mean, the risk could happen any day of the week, at any time, in any street. Most of your examples don't have anything to do with festivals. They're just terrible tragedies where a car goes onto the curb and kills a pedestrian. Or you have the 1990s incident involving the Austin Cop. So, I think this is going to what Judge Reveley's saying. I mean, preventing the risk would mean, because the risk is always there as you define the risk, it would mean having to always close streets, wouldn't it? Well, the risk came to pass during the festival when they had possession of the street where it occurred. So, that changes the nature of it. I mean, yes. Well, Austin always has, the city of Austin is a defendant. They always, under your theory, have, you know, a duty or control of the streets. That's right. But ordinarily, it's a governmental function, the traffic control of the streets. In this case, they're operating a festival, which is an amusement, as a co-sponsor. That changes, I think, the complexion of the analysis. Now, you're right, Judge Reveley. Ordinarily, there are drunk drivers on the streets. But when you know there's going to be drunk drivers, when you know you're inviting 300,000 additional pedestrians to concentrate in the roadway, then I think the knowledge that you have of the risk is elevated. And you can take precautions to block those streets where your pedestrians and your festival goers are going to be traversing when they're entering the various venues and so forth that are part of this festival. I mean, this is a unique festival. They say it's everywhere. It's in throughout the central business district. And they close streets. Sometimes they use these positive barriers to close the streets. They didn't in this case. They just put up a road close sign. Now, one last thing I would say to you is that in 2003, the same almost identical event occurred in Santa Monica at a farmer's market. An elderly man drove through or passed a road close sign, ran down 80 people, killed 16, seriously injured another 20. The National Transportation Safety Board conducted a full-blown investigation and published a 50-page report about why it happened and how to prevent it in the future that was widely distributed. This is a blueprint for how to deal with exactly what you're saying, Judge Rieveley. And I believe that that was something South by Southwest knew about and we didn't have the opportunity to develop that knowledge. All right. Thank you, counsel. May it please the court. I'm Pete Kennedy with Graves Doherty here in Moody in Austin. And I represent the two South by Southwest defendants. The plaintiffs in this case are trying to do something extraordinary, which is to hold South by Southwest, the city, and Pat Lowe, one of our contractors, liable for capital murder. On March 13th of 2014, Rashad Owens fled the police in a vehicle, went the wrong way down a one-way street, and then turned right very deliberately into a traffic-closed area, a barricaded street, the 900 block of Red River. He ran over a number of people, killed two in that block, and then he exited the block into the 1,000 block of Red River, which was open to traffic. And then within that block is when Rashad Owens murdered Mr. Handler's client or his client's son, Stephen Kramer. So there is no question, it is pled in the pleadings that Mr. Kramer was riding a bicycle on a street that was open to traffic when he was killed. So Judge Ako was correct in dismissing the claims against South by Southwest on multiple grounds, but the first and clearest ground is Mr. Kramer was in a block of the roadway which was not under South by Southwest's control under clearly established Texas law and ordered state of cause of action of premises liability. You have to allege facts that show that the defendant was in control of the premises where the injury occurred. And in this case, the pleading pled facts showing exactly the opposite. So Mr. Handler discussed the right-of-way permit and the traffic control plan that applied, both were attached to the complaint. And let's see, the right-of-way permit was Exhibit 32 and it is the permit that was granted to South by Southwest for the festival and on every page of the permit, it states as a condition that all traffic controls must be provided in accordance with the approved traffic control plan and or the Texas manual on uniform traffic control device. So the right-of-way permit is limited by the traffic control plan. The right-of-way permit was issued on March 6th. The applicable traffic control plan was issued the next day on March 7th. It was drafted by the City of Austin and the traffic control plan shows that the 900 block of Red River would be barricaded and closed, but the 1,000 block of Red River where Mr. Kramer was located when he was killed would remain open to traffic. There is no pleading other than a conclusory allegation that South by Southwest somehow controlled this block. There's no facts to suggest that South by Southwest took any action to control traffic in that open street. And in fact, if South by Southwest had done that, it would have been in violation of Texas law because Texas law does not permit private parties to control traffic in an open street. We cite the Hearst-Selenay's case that holds that. If we had done that, what Mr. Hendler is suggesting is that South by Southwest had a duty to violate Texas law in order to take some steps somehow to protect people who are riding vehicles in the street. Mr. Kramer was on a bicycle. He was in the middle of the street riding a bicycle, means he was governed by the same laws as someone driving a car and it was a terrible tragedy that he was hit, but it was an area that South by Southwest could not control and so Judge Gakel was correct in dismissing that. In the state court, are you involved in the state court litigation? Yes, sir. So the victims who were killed in the previous block where it was closed off, what was the basis, was that a foreseeability dismissal? How did those claims get thrown out? Yeah, the primary ground for dismissal there was a lack of foreseeability. Yes. There were another person, the people on the motorcycle were also outside the closed area. One was killed, one was injured, so the same grounds applied to them, lack of control. And Mr. Hendler discussed, you know, his preference about how the city of Austin might close or barricade streets. But there is no specific allegation that the use of the type of barricades that the city chose, which are called type three barricades, they're the kind of the light reflective barricades that you see that have three panels on them. They're called type three barricades. The city of Austin requires those. And we cite this on page 11 of our brief. The city of Austin transportation criteria manual, section 8.5.7B4, says that type three barricades are to be used to close streets. Nothing in that manual says that water-filled barricades should be used to close off or block off a street. If the court looks at Mr. Hendler's petition, you'll see there's photographs in there of his preferred type of barricades. Those are all placed parallel to traffic. They're not used, you know, perpendicular to traffic to close off streets. So the first ground is the simplest. South By did not control the street, therefore we had no duty to protect Mr. Kramer from Rashad Owens' criminal acts. Same, but there's the second ground is the lack of foreseeability that even if we did control it, Texas law is extraordinarily well established that when the plaintiff is the victim of a crime, then in order to impose a duty on a third party to prevent injury from that crime, the plaintiff must show that the crime was foreseeable. Texas has recognized only two ways that a plaintiff can show that a crime was foreseeable. The main area where you see most of the cases decided is under timber walk and timber walk requires a showing of actual crimes on or very near the premises that were similar to the crime at issue. The proximity requirement in timber walk, it's really talking about crime rates. Right there it was a rape at an apartment complex in Houston and the Texas Supreme Court says, well, you need to show other violent incidents near that apartment complex because crime rates really vary throughout Houston and throughout the state. I mean, it doesn't seem to me that really applies to a vehicular crime like this because you don't have the same differences. I mean, what should really matter is the traffic concentration similar to where these other incidents occurred. Not is it, you know, if it occurred in Dallas, why wouldn't that be relevant at a festival in Dallas or the one in California? Well, for one reason, because the Texas Supreme Court has been very clear, it talks about crimes on or near the premises so that you can then predict whether something would happen. There is no case, and I've read them all, there are no Texas case that looks beyond the immediate vicinity of a crime to find that a crime is foreseeable. There are specific cases rejecting allegations of crimes in other areas and there are specific cases rejecting sort of vague references to crime statistics versus similar incidences. There's no question this was an extraordinarily unusual incident. Well, Counselor Layton, they cite statistics that between 2009 and 2014 in downtown Austin, during South by Southwest, there were at least 153 collisions between motorists and pedestrians or bicyclists. Isn't that significant? No. Not under Timberwalk, Your Honor, for several reasons. The first is they mischaracterized their own statistics and we point this out. Those statistics are citywide. The statistics about collisions, there's actually a notation at the top of the box. It's not about downtown Austin. It's about the entire city of Austin. During South by Southwest. During the period of South by Southwest. Right. That's right. The second problem with the data is. So what we know is during the period of South by Southwest, there are a lot more collisions in Austin between motorists and pedestrians and bicyclists. We don't know more, Your Honor, because those are not comparative statistics. Those are just raw statistics. And even assuming that there were more, Timberwalk requires several things. One is that it has to be a prior crime. Right. And there's no indication that any of these statistics reflect prior crimes. And it also needs to show similarity. Right. And what the actual instances that the plaintiff cites to don't bear any similarity to what happened here. Right. And what happened here is a police chase through a barricaded area that hurt a number of people and then opened back up again into open streets. And so if the plaintiffs are saying what was foreseeable was a collision between vehicles and people within barricaded areas during South by Southwest, there's no history of a vehicle ever in 27 years of South by Southwest festivals. There's no incident of a vehicle ever penetrating into a closed-off block and injuring a person, not one. If what the plaintiffs are saying is that in the open streets, there's more traffic and there may be a higher rate of car collisions or car bicycle collisions or car pedestrian, then the issue is we don't control the open streets. The city drafted the traffic control plan. It elected to leave the 1,000 block of Red River open. There was nothing that we could do in the 1,000 block of Red River to protect bicyclists. So either way, either control or foreseeability, the plaintiff's claims fail. I do want to address the argument that the idea of subjective awareness of the possibility of a type of incident would support liability on a defendant. There's two problems with that. One is there's no Texas case law to suggest that that is a theory, that instead of showing prior similar crimes on the premises, that a plaintiff could show, well, you thought about the possibility of this incident, and therefore, it was foreseeable. In fact, there are multiple Texas cases that say the opposite. We've cited these, but Trammell Crowe, there was an allegation that because the defendant employed security guards, that the defendant anticipated crime, and the Supreme Court said that doesn't make crime foreseeable. In Park v. Exxon Mobil, the Dallas Court of Appeals said the mere act of taking preventative measures to protect against the possibility of future crime is not the same as foreseeing that criminal activity. And then just as a practical matter, unless the act of taking preventative measures, their allegation is you didn't take preventative measures after having a conversation about the possibility of this happening. Isn't that right? Well, I guess so, Your Honor, but what they have to say is the incident was foreseeable. The failure to take preventative measures, the alleged failure to take preventative measures, is an allegation of breach of duty. Before they get there, they have to show that. Well, I only brought that up because you were citing a case, but that case talked about the act of taking preventative measures. Right. Right. Because you don't deny that there was a conversation about the possibility of an incident like this. It's alleged in the complaint, Your Honor, so we're not denying it in this state. There was. But we have conversations about terrorist attacks. We have conversations about active shooters. We take all sorts of security measures. If the law said that our taking those measures or considering the possibility of events would then turn those events into being foreseeable, that would flip Texas law on its head. And it would create a negative incentive for festival organizers or for cities to look into possibilities that haven't occurred yet. So at the time that the alleged tabletop exercise took place, no one had ever driven into a crowd that hadn't ever happened before. Twenty-seven years it hadn't. So the fact that South By was allegedly involved in this tabletop exercise suggests that it is looking at possibilities to then flip it around and say the fact that you're practicing for potential tragedies would then make us liable. It would turn us into the insurer of everybody who attends the festival from crime. And the Texas Supreme Court has been very clear that premises owners are not the insurers against criminal activity. And that the only time that a property owner is liable for criminal activity in the third part is when it's foreseeable based on two methods, one under Timberwalk prior incidences and multiple prior incidences that are the same or under Del Lago, which I think Mr. Hendler conceded doesn't apply, which applies only to a particular time when a party has a particular knowledge that violence is about to break out. That was a hotel bar where there was a fight that was about to break out and the defendant knew about it and did nothing to prevent it. So Del Lago doesn't apply as I think Mr. Hendler has conceded. So my time is up unless the court has further questions. Thank you, counsel. Thank you. May it please the court.  In my five minutes, perhaps it would be best to respond to some of the questions that were posed relevant to the city. And that is that yes, the city of Austin did control the streets at the point of this accident. I believe Mr. Hendler has submitted a demonstrative today of the traffic control plan. This accident was outside of the area he has drawn. It was north of 11th Street, which is outside the area he has drawn as where the right-of-way permit was issued to South by Southwest. So the city of Austin did control the street. There are three cases that are most applicable here and I think responsive to your questions, two of them just last year. In January of 2017 is the case of UDR v. Petrie. That's a Texas Supreme Court case where they talked about not only the foreseeability but also the unreasonableness of the risk. And I think that goes to your point, Justice Reveley, where you were discussing about the possibility is what would the city of Austin have to do? This could happen on any street. And what this case has not gone to is either the state case or the federal case is the second step of Timberwalk. Timberwalk not only requires foreseeability but an unreasonable risk. And that did not go to this in this case today. So this court would have to find both, that the risk was foreseeable and that the city of Austin should have recognized that risk based on the second step of unreasonableness. And this is something which the plaintiff has never addressed. And as Petrie stated in last year was because they never briefed it, it's waived. So they've never addressed the fact that the second factor of Timberwalk. There's another case last year and that is city of Austin v. Frame in May 2017. And to your point, Judge Costa, about not changing Texas law, in that case, that is actually an incident that the plaintiff relies on as a similar incident. They complain of an incident where the hike and bike trail on First Street in the city of Austin is paralleled by First Street and they complain that a driver jumped over the curb, killed one man and seriously injured another, which is exactly what happened. Well, Mr. Rosales in that case was convicted of aggravated assault with a deadly weapon, which the deadly weapon being the vehicle. And the Third Court of Appeals did a very good job of analyzing what has not been thoroughly addressed by the plaintiff or discussed to date, which is our governmental immunity. The city has governmental immunity in this case on a number of levels. Why didn't you raise that in front of Judge Yackel? I mean, I understand we still have to look at that if it's jurisdictional, but it just seems if it's such an obvious defense, why wouldn't it be asserted in the trial court as the first line of defense? It was asserted indirectly. It was not briefed as thoroughly as it was in the state court case, Judge Costa. I have substituted in for oral argument. But you're right, it could have been addressed more briefly, but I think the point I would make is that governmental immunity is never waived and can be raised for the first time on appeal. I don't believe that it was, but it can be. I think the reason it wasn't more thoroughly briefed is because the plaintiff never claimed there was a waiver of governmental immunity. They've never gone through all the levels in the Tort Claims Act that you must get to before you even get to the arguments that they make. What the frame court You're not telling me they have an obligation to raise your affirmative defense for you and then address it. Is that what you're telling me? I'm not, Justice Graves. I am saying that it is the plaintiff's burden to overcome governmental immunity and to plead a waiver of governmental immunity, which they did not do. They simply moved on to the issues that you've heard without claiming that the city had waived governmental immunity. But they don't have to, I mean I don't want to belabor it, but I don't know why they'd have to overcome something that you don't raise. And it's your defense. That's correct, Judge Costa, Justice Graves. What I can say is the third court of appeals in frame was very clear that these choices of what barrier to use is totally discretionary. In frame, that plaintiff also said we should have erected different types of barriers to protect runners on the trail, and the frame case said no, the discretion is within the city of Austin on what type of barriers. The only other case that I would point to is Wentzel, and that is most similar to this case as far as the argument that somehow this was not a governmental function, that it was proprietary, and that's not true. Wentzel was also taking place during a festival in New Braunfels, Texas. The motivation of the city, if we were the co-sponsor, doesn't change the fact that this is a governmental function, and immunity is not waived for governmental functions. If there's any further questions, I'm out of time. Thank you, counsel. Rebuttal. Thank you, Judge Graves. First, let me point out that the demonstrative aid that I provided to the court at the outside of oral argument shows inside the red box area of detail, and I want to correct the statement that was made by counsel for the city. Mr. Cranmer was killed north of 10th Street, not north of 11th Street. It was just a few meters north of 10th where he was standing stationary on a bicycle adjusting something. That's what the evidence will be. That's what the witnesses will testify about when he was struck from behind. So he was not riding in the middle of the road. He was on the side of the road, and he was stopped. Judge Costa, with respect to the issue you raised when I was addressing you earlier about whether a court sitting in diversity can expand the law, and I would say no. You can't expand the law, but what I would say is that Del Lago gave the court license to consider other alternatives, and I'd like to just read you a brief statement from Del Lago. When a property owner by reason of location, mode of doing business, or observation, or past experience should reasonably anticipate criminal conduct on the part of third persons, the owner has a duty to take precautions against it. This duty is recognized because the party with the power to control is in the best position to protect against the harm, and that's Del Lago at 769. 307 Southwest 3rd at 769. I would also point out to you that we did plead the issue raised in Petrie. We specifically addressed the unreasonableness of the risk of being run down by an automobile, and we demonstrated that a cost-benefit analysis weighs in favor of taking more aggressive precautions by using water-filled barricades, by using a hand jack that can move them very easily. Would a water-filled barricade stop a car? Yes. According to the traffic, the manual on uniform traffic control devices, and in particular the 804 requirements that the city of Austin has adopted, adopts the manual on uniform traffic control devices. And this is an involved analysis. The manual says you have to look at the circumstances that you are implementing the traffic control devices for. So it's one thing if you're closing a street because But there's nothing in the manual that specifically requires that they use a water-filled barrier under these circumstances, is there? Well Can you say that explicitly? It's pretty close. I would say it's pretty close. Record on Appeal 132 to 134, I believe, addresses this issue. The manual states that where pedestrians are going to come into contact with traffic, you should use positive barriers. And you can use these K-rails, either water-filled ones or concrete ones that you see on the highway. Now, concrete may not be as practical for a temporary installation for a week or two weeks, but water-filled barriers will deflect an automobile from breaching the zone. And so if that is a de minimis cost, and it was used by South by Southwest in other parts, two blocks away, for a different purpose, to channel traffic into a garage. So the practicality of using it is not unreasonable. It's not an unreasonable burden to impose on South by Southwest. P3 also addresses public policy considerations. And I submit to you that allowing the plaintiffs to develop the evidence in this case and proceed will help establish that the ordinances on the books have to be followed. They were not complied with. And we pled that. Now, if at the end of the day, on summary judgment, our evidence isn't substantial enough to overcome a defense, that's one thing. And we may be back on that issue. But at this stage, at a 12B6 stage, I'm really arguing a summary judgment standard and I got poured out on a 12B6 motion. So I think foreseeability clearly is a fact issue. It ultimately has to be decided by the court and whether that's substantial enough for duty. But in the state courts, substantial amounts of crime data were submitted, which I amended and added into the claims when I added the city into the case. So that evidence could be developed. The control issue, the right-of-way permit clearly states that the 1,000 block of Red River where Mr. Cranmer was killed was under South by Southwest control. Thank you, counsel. Your time has expired. Thank you. All right. The court will take this matter under advisement and we call the